UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STERLING MARTIN                            CIVIL ACTION

VERSUS                                     NO. 17-3249

BP EXPLORATION &                           SECTION M (5)
PRODUCTION INC., *et al.*

## ORDER & REASONS

Before the Court is a motion by plaintiff Sterling Martin to deem admissible the opinions of his purported causation experts, Patricia Williams, Ph.D., C. Ann Conn, M.D., and Lee Lemond, because of the defendants' alleged spoliation of evidence related to the oil-spill cleanup workers' exposure to oil and other chemicals.[1] Defendants BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") respond in opposition.[2]

Also before the Court are three *Daubert* motions filed by BP to strike and exclude the causation opinions of Martin's purported experts, Susan Andrews, Ph.D.,[3] Williams,[4] and Conn.[5] Martin responds in opposition,[6] and BP replies in further support of the motions.[7] And, finally, before the Court is BP's motion for summary judgment arguing that the case should be dismissed

---

[1] R. Doc. 51.
[2] R. Doc. 54.
[3] R. Doc. 47.
[4] R. Doc. 48.
[5] R. Doc. 49.
[6] R. Docs. 55; 56; 57.
[7] R. Docs. 67; 68; 69. BP also submits a supplemental memorandum in support of its *Daubert* motions directed against Williams and Conn. R. Doc. 61 at 1-6 (positing as to specific causation that "Lemond's testimony establishes that Drs. Williams and Conn inaccurately used his report as evidence of the plaintiffs' exposure to arsenic" because he made no comparison of arsenic levels in soil before and after the spill, much less from the geographic areas where Martin worked).

because Martin cannot prove general causation without an admissible expert opinion.[8] Martin responds in opposition,[9] and BP replies in further support of the motion.[10]

Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying Martin's spoliation motion, granting BP's motion to exclude Williams, and consequently granting BP's motion for summary judgment due to Martin's inability to prove general causation.[11]

I.  BACKGROUND

This case is one of the "B3 cases" arising out of the *Deepwater Horizon* oil spill that occurred on April 20, 2010.[12] The B3 plaintiffs all make "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g. dispersant)."[13] These cases were originally part of a multidistrict litigation ("MDL") pending in another section of this court before Judge Carl J. Barbier. When Judge Barbier approved the *Deepwater Horizon* medical benefits class action settlement agreement, the B3 plaintiffs either opted out of the settlement or were excluded from the class definition.[14] Judge Barbier then severed the B3 cases from the MDL, and those cases were reallotted among the judges of this court.[15]

---

[8] R. Doc. 50.
[9] R. Doc. 58.
[10] R. Doc. 71.
[11] Because this Court excludes Williams's general causation opinion, which (as noted in the text to follow) is the linchpin of Martin's case, it is unnecessary to address BP's *Daubert* motions directed against her other experts, Andrews and Conn, whose opinions are limited to specific causation. Martin insists, though, that Conn is also being offered as a general causation expert, but the Court agrees with BP's assessment that Conn's report and deposition testimony indicate otherwise and that, in any event, she fails to offer any opinion concerning "the dose of arsenic known to cause toxic encephalopathy." R. Doc. 69 at 3.
[12] R. Doc. 9 at 1-2, 50.
[13] *Id.* at 50.
[14] *Id.* at 51 n.3.
[15] *Id.* at 1-58.

Martin alleges that he was exposed to weathered oil and dispersants when he performed oil-spill cleanup work for 79 days in the summer of 2010, near Horn Island, Mississippi, as the captain of a vessel.[16] He originally sued for a whole host of medical conditions, but his claim for chronic toxic encephalopathy ("CTE") is the only one currently being pursued.[17] Martin opted out of the medical benefits class action settlement agreement.[18] In this action, he asserts claims for negligence with respect to the oil spill and cleanup.[19]

In the case management order for the B3 bundle of cases, Judge Barbier noted that, to prevail, "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[20] He further observed that causation "will likely be the make-or-break issue for many B3 cases," and "the issue of causation in these toxic tort cases will require an individualized inquiry."[21]

Martin offers the opinions of three purported experts in his attempt to prove causation: neuropsychologist Andrews, toxicologist Williams, and neurologist Conn. BP seeks to exclude all these experts, and consequently, the dismissal of Martin's case for failure to prove causation. Martin opposes BP's motions on the merits but also argues that his causation experts' opinions should be admitted due to BP's spoliation of evidence.

---

[16] R. Docs. 2 at 2-4; 47-7 at 1-15.
[17] R. Docs. 48-6; 50-1 at 3.
[18] R. Doc. 2-2.
[19] R. Doc. 2 at 3-6.
[20] R. Doc. 9 at 53.
[21] *Id.* at 53-54.

## II. LAW & ANALYSIS

### A. Martin's Spoliation Motion (R. Doc. 51)

Martin's spoliation motion is substantially the same as those filed by the plaintiffs and denied by this Court in other B3 cases. *See, e.g., Fairley v. BP Expl. & Prod. Inc.*, 2022 WL 16731817 (E.D. La. Nov. 3, 2022); *Moore v. BP Expl. & Prod. Inc.*, 2022 WL 16694238 (E.D. La. Nov. 3, 2022). As did the plaintiff in *Fairley*, Martin argues that this Court should deem admissible the opinions of his purported general causation expert because BP spoliated evidence by failing to undertake a monitoring program to develop evidence of the cleanup workers' actual toxic exposures to the specific chemicals that were in the weathered oil.[22] In *Fairley*, this Court found that the plaintiff did not meet his burden to prove spoliation because there was no allegation that BP destroyed, altered, or failed to preserve any *existing* evidence, there was no proof that BP had a duty to conduct a monitoring program to create evidence in order to preserve it, there was no evidence that BP acted in bad faith, and finally, the proposed remedy of deeming the purported general causation expert's opinions relevant would not cure the deficiencies in his expert report.[23] *Fairley*, 2022 WL 16731817, at *3-4.

As have other B3 plaintiffs,[24] Martin attempts to avoid this same outcome by attaching to his motion an affidavit executed by Dr. Linda Birnbaum, former director of the National Institute of Environmental Health and Safety, in which she states that a monitoring program would have improved worker safety, would have helped to protect workers from long- and short-term health effects, and would have been the only way to obtain quantitative data on spill workers' exposures that could now be used to establish a person's exposure to a "given chemical at a given level."[25]

---

[22] R. Doc. 51-1 at 1-24.
[23] In *Fairley*, the purported general causation expert was Dr. Jerald Cook.
[24] *See, e.g., Jenkins v. BP Expl. & Prod. Inc.,* 2023 WL 172044, at *1 (E.D. La. Jan. 12, 2023).
[25] R. Doc. 51-26 at 1-5.

Dr. Birnbaum also attests that the Gulf Study is the best available evidence of the workers' exposures, and that it is not "plausible" to establish an oil-spill responder's quantitative exposure to a particular chemical at a given level based on the data that was collected during the spill response when considering the thousands of chemicals and other variables at play.[26]

The addition of Dr. Birnbaum's affidavit does not save Martin's spoliation motion.[27] Dr. Birnbaum's affidavit does not establish that BP destroyed, altered, or failed to preserve any *existing* evidence, nor that BP had a duty to conduct a monitoring program to *create* evidence in order to preserve it. Moreover, Dr. Birnbaum's affidavit does not provide evidence that BP acted in bad faith. Once again, a B3 plaintiff (this time Martin) is left to argue that BP's failure to undertake a monitoring program to *develop* and *preserve* evidence, which might potentially have aided future B3 plaintiffs in making claims against BP, amounted to spoliation because such evidence really came into being when the future B3 plaintiffs were exposed to the weathered oil.[28] In no way can Dr. Birnbaum's affidavit be read to support this absurd and repeatedly rejected argument; instead, the affidavit candidly states that contemporaneous monitoring was the only way to collect quantitative data for a general causation opinion and it was not done. The affidavit points to no source (statute, rule, or other dictate) imposing a duty on BP to conduct such monitoring and, by suggesting that monitoring was necessary to create evidence of exposure, it concedes that no such evidence ever existed for BP to preserve. Courts have held that "the duty to preserve evidence does not include the duty to *create* evidence. Since the duty to preserve evidence implies a duty not to alter or destroy *existing* evidence, 'spoliation does not encompass a defendant's failure to

---

[26] *Id.* at 5-7.
[27] BP correctly argues that Dr. Birnbaum's affidavit should not be considered because it purports to offer expert opinions and Dr. Birnbaum was not properly or timely disclosed as an expert. This constitutes a separate and additional reason the affidavit should not make any difference with respect to the spoliation motion.
[28] R. Doc. 51-1 at 20-21.

5

photograph an accident site .... Thus, the absence of after-the-fact photographs ... cannot support a spoliation claim.'" *De Los Santos v. Kroger Tex., LP*, 2015 WL 3504878, at *6 n.4 (N.D. Tex. June 3, 2015) (quoting *Bertrand v. Fischer*, 2011 WL 6254091, at *4 (W.D. La. Dec. 14, 2011)) (emphasis in original; internal citation and alteration omitted). Said differently, "[a] failure to *collect* evidence that may or may not have been available for collection is very different from the intentional destruction of evidence that constitutes spoliation." *United States v. Greco*, 734 F.3d 441, 447 (6th Cir. 2013) (emphasis added). Thus, like the plaintiff in *Fairley*, Martin has not met his burden on spoliation.

Accordingly, for the reasons stated in the Order & Reasons issued in *Fairley,* which are not altered by Dr. Birnbaum's affidavit, Martin's spoliation motion must be denied.

**B. BP's *Daubert* Motion to Exclude Patricia Williams, Ph.D. (R. Doc. 48)**

Martin offers Williams, a board-certified toxicologist with a doctorate in anatomy, as a general and specific causation expert.[29] Williams offers a general causation opinion that there is a cause-and-effect relationship between arsenic exposure and CTE, and a specific causation opinion that Martin's CTE was caused by arsenic exposure sustained while performing oil-spill cleanup work.[30]

A district court has discretion to admit or exclude expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

---

[29] R. Doc. 48-3 at 1-7. BP does not contest Williams's qualifications, so the Court will not discuss them in detail.
[30] *Id.* at 171-73.

6

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and

7

may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

BP argues that Williams's opinions should be excluded because she does not identify the dose of arsenic known to cause any form of CTE or Martin's dose of exposure to arsenic.[31] BP contends that Williams's opinion that Martin was exposed "'to sufficient concentrations of arsenic known to cause [CTE]'" is an unsupported, non-specific conclusion that is unreliable under applicable precedent.[32] BP points out that Williams's work here employs the same analytical methodology that she used for her expert reports that were excluded by other courts in other *Deepwater Horizon* cases.[33] BP contends that Williams failed to: identify relevant statistical associations in the epidemiological literature; evaluate the limitations and biases of the epidemiological studies; and provide a reasoned analysis of the Bradford Hill factors to determine whether an association reflects a true cause-and-effect relationship.[34] Finally, BP argues that Williams's specific causation opinion should be excluded because she does not have any information on the dose of arsenic to which Martin was allegedly exposed, failed to evaluate the information she did have, is unqualified to provide some of the required opinions because she is not a medical doctor, and failed to consider alternative causes of Martin's alleged ailment.[35]

---

[31] R. Docs. 48-1 at 4; 68 at 2-6.
[32] R. Doc. 48-1 at 4 (quoting R. Doc. 48-3 at 173).
[33] *Id.* at 5-6.
[34] *Id.* at 12-17.
[35] *Id.* at 17-24.

In opposition, Martin, citing his spoliation motion, argues that it is impossible for any expert to identify a specific dose of a specific chemical at a specific level because BP failed to conduct dermal monitoring and biomonitoring of oil-spill workers to create such evidence.[36] Martin also argues that Williams applied the methodology of the *Reference Manual on Scientific Evidence* appropriate for toxicology and the Bradford Hill standards to form a "biological plausibility causation opinion" that arsenic exposure can cause CTE.[37] According to Martin, Williams adequately identified the chemical at issue (arsenic), relied on testing of arsenic levels on the Gulf Coast from Texas to Florida done by environmental expert Lemond, and consulted scientific and medical literature establishing a link between arsenic exposure and CTE.[38] Further, Martin argues that toxicologists are qualified to render specific causation opinions and that Williams used a proper methodology to provide one in this case.[39] Finally, Martin argues that Williams did consider other causes of CTE because she reviewed Martin's medical history.[40]

Pretermitting whether Williams employed a proper methodological analysis or was qualified to render a specific causation opinion, Williams's general causation opinion must be excluded for the same reason that this Court has excluded other general causation opinions in B3 cases – namely, Williams fails to identify the dose of exposure (*i.e.,* the exposure to a certain level of a certain substance for a certain period of time) to arsenic necessary to cause the development of CTE in the general population. Without information concerning this theoretical cause-effect possibility in the general population, there is no way to determine if the specific dose of exposure

---

[36] R. Doc. 57 at 5-6 (citing R. Doc. 51).
[37] *Id.* at 9-16.
[38] *Id.* at 8, 18-19.
[39] *Id.* at 16-18.
[40] *Id.* at 23-24.

experienced by any plaintiff (including Martin) was sufficient to cause harm.  As explained in other B3 cases:

> a [general] causation expert must identify "the harmful level of [] exposure to a chemical." *Allen* [*v. Pa. Eng'g Corp.*], 102 F.3d [194,] 198-199 [(5th Cir. 1996)]. The Fifth Circuit states that this detail is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case." *Id.* at 199.  *See also McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (affirming the exclusion of an expert's opinions when "[n]one [of the studies on which the expert relied] provide conclusive findings on what exposure level of Corexit is hazardous to humans.").

*Novelozo v. BP Expl. & Prod. Inc*, 2022 WL 1460103, at *8 (E.D. La. May 9, 2022); *Murphy v. BP Expl. & Prod. Inc.*, 2022 WL 1460093, at *8 (E.D. La. May 9, 2022).

Because identification of the harmful level of exposure to a chemical is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case," *Allen*, 102 F.3d at 199, and Williams has not provided this information with respect to the general population, her report is unreliable and her general causation opinions inadmissible.  This is not the first court to so hold. *See In re Deepwater Horizon BELO Cases,* 2020 WL 6689212, at *11-16 (N.D. Fla. Nov. 4, 2020) (concluding that Williams's opinions that "a cause-effect relationship exists between arsenic and chronic dermatitis" constitute "classic *ipse dixit*" and fall "woefully short of the *Daubert* and Rule 702 standards based on her failure to identify *relevant* statistically significant associations in the epidemiologic literature and her failure to provide anything more than a conclusory analysis of the Bradford Hill factors to explain her opinions"), *aff'd*, 2022 WL 104243, at *2-3 (11th Cir. Jan. 11, 2022); *Osmer v. BP Expl. & Prod. Inc.,* 2021 WL 4206950 (E.D. La. Sept. 16, 2021) (excluding Williams's causation opinions on multiple grounds).  Williams's "biological plausibility causation opinion" simply does not suffice under the analytical framework the Court is to apply.  *See, e.g., In re Deepwater Horizon BELO Cases,* 2022 WL 17734414, at *10 (N.D. Fla. Dec. 15, 2022) (observing that "biological possibility is not proof of causation" but amounts to an over-reliance

on a single Bradford Hill factor) (quoting *In re Accutane Prods. Liab.,* 511 F. Supp. 2d 1288, 1296 (M.D. Fla. 2007)).

Accordingly, BP's motion *in limine* to exclude Williams's testimony must be granted.

**C. BP's Motion for Summary Judgment (R. Doc. 50)**

BP argues that it is entitled to summary judgment because Martin lacks general causation expert testimony. As explained above, this Court has excluded Williams as a general causation expert. Without a general causation expert, Martin's claims arising from chemical exposure must be dismissed with prejudice. *See, e.g., Brister v. BP Expl. & Prod. Inc.*, 2022 WL 3586760 (E.D. La. Aug 22, 2022); *Burns v. BP Expl. & Prod. Inc.*, 2022 WL 2952993 (E.D. La. July 25, 2022); *Carpenter v. BP Expl. & Prod. Inc.*, 2022 WL 2757416 (E.D. La. July 14, 2022); *Johns v. BP Expl. & Prod. Inc.*, 2022 WL 1811088 (E.D. La. June 2, 2022). Like the plaintiff in *Jenkins v. BP Exploration & Production Inc.*, Martin attempts to save his case with Dr. Birnbaum's affidavit, but for the same reasons given in that case, the affidavit neither cures nor explains the deficiencies in the report of Martin's purported general causation expert. *See Jenkins*, 2023 WL 172044, at *2-3.

**III. CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Martin's spoliation motion (R. Doc. 51) is DENIED.

IT IS FURTHER ORDERED that BP's motion to strike and exclude the general causation opinion of Williams (R. Doc. 48) is GRANTED.

IT IS FURTHER ORDERED that BP's motion for summary judgment (R. Doc. 50) is GRANTED, and Martin's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 13th day of January, 2023.

                                                                                                                   BARRY W. ASHE
                                                                                                                 UNITED STATES DISTRICT JUDGE